# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-1731V

| | |
|---|---|
| DOYLE MANNING,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: January 9, 2026 |

*Michael G. McLaren, Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN, for Petitioner.*

*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On October 4, 2023, Doyle Manning filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine he received on October 9, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner's Table SIRVA claim must be dismissed, because he has not preponderantly established that he suffered limited/reduced range of motion. He may, however, have a causation-in-fact claim.

## I.     Relevant Procedural History

Respondent filed a Rule 4(c) Report contesting entitlement on May 16, 2024, in which he argues that Petitioner "has not established limited or reduced ROM," because his "left shoulder was examined and found to have full ROM on numerous occasions," and because "Petitioner has not preponderantly established shoulder symptomology within forty-eight hours of vaccination." Rule 4(c) Report at 7.

Petitioner then filed a Motion for Ruling on the Record ("Mot.") on July 8, 2024. ECF No. 21. Respondent filed a response ("Resp.") on August 15, 2024 and Petitioner filed a reply ("Repl.") on September 6, 2024. ECF No. 22-23. The matter is now ripe for adjudication.

## II.    Relevant Facts

*Medical Records*

Petitioner had a long history of neck pain when he received flu and Covid-19 vaccines in his left deltoid on October 9, 2021. Ex. 2 at 3; *See also* Ex. 5 at 9; Ex. 4 at 21-29.

Petitioner sought treatment at an urgent care on November 28, 2021, about seven weeks after his vaccination. Ex. 4 at 14-15. He reported "pain on [the] left arm where he had his covid booster shot x7 weeks." *Id*. at 14. On exam, Petitioner had normal active and passive range of motion. *Id*. at 15. He was referred to orthopedic surgery. *Id*.

Petitioner saw an orthopedic physician's assistant on December 1, 2024. Ex. 5 at 11. The symptom onset day is memorialized in the relevant record as October 9, 2021. *Id*. at 13. Petitioner reported "pain in his left shoulder [that] started a couple of weeks ago" after receiving flu and Covid-19 vaccines. *Id*. An exam revealed full passive range of motion, pain with special testing, and good strength. *Id*. He was diagnosed with rotator cuff syndrome, prescribed Meloxicam, and given home exercises. *Id*. Petitioner also received a cortisone injection to his shoulder. *Id*.

Petitioner returned to the orthopedic physician assistant on May 16, 2022, more than five months later. Ex. 5 at 8. He reported that his "left shoulder felt great for a couple of months after the shot," but that the pain had returned, and that "it hurt to abduct his shoulder and lay on his left side." *Id*. at 10. Petitioner had full active and passive range of motion, pain with resisted testing, and full strength. *Id*. He received a second cortisone

injection and a referral for physical therapy to evaluate and treat his left shoulder with "ROM as appropriate." *Id*.

On August 12, 2022, Petitioner visited an urgent care for chest pain and fatigue. Ex. 4 at 4. After an abnormal EKG, Petitioner was transferred to the emergency room for evaluation. *Id*. at 5-6; Ex. 6 at 9. The notes for physical exam indicated "normal range of motion." *Id*. at 14. He was discharged the same day. *Id*. at 17.

*Witness Statements*

Petitioner filed two affidavits in support of his claim. Ex. 1, 15. He stated that his "left shoulder pain began nearly immediately" after his vaccination. Ex. 1 at ¶3. Petitioner stated that he "agree[d] that [he] 'could' move [his] left shoulder as they manipulated it during the exams, but it was not without pain." Ex. 15 at ¶5. He explained that he "can avoid a large amount of the pain by not moving [his] left arm past a point where [he knows] pain is likely to occur." *Id*. at ¶3. He contends that his "range of motion . . . is necessarily decreased" because he does not move it in ways that cause pain. *Id*. at ¶6.

Petitioner's husband, Buren McCarver, provided an affidavit at Exhibit 13. He recalled Petitioner complaining of soreness the day after vaccination. *Id.* at ¶4. He remembered Petitioner "having difficulty raising his arm and [grimacing] after lifting even the lightest of weights." *Id*. at ¶6. He noted that "the pain noticeably reduces [Petitioner's] range of motion on a variety of tasks because he avoids going above or beyond the point where he knows pain is likely to ensue." *Id*. at ¶11.

Petitioner's friend and co-worker, Beverly Wulkowicz, provide an affidavit at Exhibit 14. Ex. 14. She remembered Petitioner "working on some physical therapy exercises at home, but largely, he just avoids using his arm in ways that he knows will cause pain." *Id*. at ¶8.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning severity of petitioner's injury, a petitioner must establish that he suffered an injury meeting the Table criteria, in which case

4

causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (*e.g.* tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## IV.  Findings of Fact

Respondent argues that Petitioner has failed to demonstrate limited or reduced range of motion from his SIRVA, as required by the third QAI for the claim.[3] 42 C.F.R. § 100.3(c)(10)(iii); *See also Bolick v. Sec'y of Health & Human Servs.*, No. 20-0893, 2023 WL 8187307, at *7-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023) (establishing that the third QAI requirement "requires that a Petitioner demonstrate they suffered both pain and limited range of motion"). Respondent notes that "Petitioner's left shoulder was examined and found to have full ROM on numerous occasions . . . including twice with his treating orthopedic physician's assistant." Resp. at 8.

Petitioner argues that he has preponderantly established that he suffered limited or reduced range of motion because he had positive impingement testing and pain *with* movement, which he proposes is evidence of reduced active range of motion. Mot. at 10-11. Further, Petitioner argues that the "omission of any notation for full ROM at Petitioner's December 1, 2021 physical assessment," supports the conclusion that his active range of motion was reduced. Resp. at 6. Finally, Petitioner argues that his diagnosis of left rotator cuff syndrome, along with the imaging and treatments recommended by his providers, are indirect evidence of ROM issues. *Id.* at 6, fn. 2.

This record, however, contains affirmative proof of a *lack* of ROM issues. Petitioner sought shoulder-specific treatment on only three occasions – once at urgent care and twice with an orthopedist – and was each time found to have full range of motion.[4] Ex. 4 at 14-15 (normal active and passive range of motion); Ex. 5 at 8-10 (full passive range of motion); 11-13 (full active and passive range of motion). The records also indicate that Petitioner suffered pain with certain movements, but do not include complaints that his range of motion was *limited*. *See e.g.* Ex. 5 at 8-10 ("it hurt to abduct his shoulder and lay on his left side"); 11-13 (pain with special testing).

In addition, Petitioner's affidavits, and those of his witnesses, make clear that Petitioner's motion limitations were due to pain (which made him *reluctant* to move his shoulder), rather than actual range of motion deficits. *See* Ex. 13 at ¶11 ("the pain

---

[3] Respondent also contests Petitioner's evidence of onset of pain within 48 hours of his vaccination, which can be likely resolved in Petitioner's favor. *See* Ex. 5 at 13 (onset date recorded as October 9, 2021); Ex. 1 at ¶3 (his "left shoulder pain began nearly immediately" after his vaccination; Ex. 13 at ¶4, 6 (recalled Petitioner complaining of soreness and "having difficulty raising his arm and [grimacing] after lifting even the lightest of weights the day after vaccination.). Nonetheless, Petitioner's inability to meet the Table's range of motion requirement is fatal to his Table SIRVA claim.

[4] Respondent also notes a normal range of motion exam on August 12, 2022. Resp. at 8. But this was an emergency room visit for chest pain and, other than an evaluation of Petitioner's cervical spine, this record does not indicate which body part(s) were tested, suggesting little evidentiary weight should be given to this specific item of proof.

noticeably reduces [Petitioner's] range of motion on a variety of tasks because he avoids going above or beyond the point where he knows pain is likely to ensue."); Ex. 14 at ¶8 (remembered Petitioner "working on some physical therapy exercises at home, but largely, he just avoids using his arm in ways that he knows will cause pain."); Ex. 15 at ¶3 (he "can avoid a large amount of the pain by not moving [his] left arm past a point where [he knows] pain is likely to occur.); ¶5 (he "agree[d] that [he] 'could' move [his] left shoulder as they manipulated it during the exams, but it was not without pain."); ¶6 (his "range of motion . . . is necessarily decreased" because he does not move it in ways that cause pain.). In fact, the only evidence in the record of *any* actual limitation in range of motion was Petitioner's husband's recollection of Petitioner "having difficult raising his arm" the day after vaccination. Ex. 13 at ¶6. Otherwise, Petitioner has admitted that he could fully move his shoulder, even if it caused him pain. Ex. 15 at ¶5.

This record thus does not preponderantly support the ROM SIRVA requirement. As I explained in *Bolick v. Sec'y of Health & Human Servs.*, No. 20-0893, 2023 WL 8187307, at *8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023), pain with motion "is not the equivalent to demonstrating limited range of motion." The Table element requires proof of the latter. Petitioner argues that his case is distinguishable from *Bolick*, and more like *Strand v. Sec'y of Health & Human Servs.*, No. 20-0365V, 2023 WL 2155188 (Fed. Cl. Spec. Mstr. Feb. 22, 2023), in which I found subjective evidence of limited range of motion that was sufficient to preponderantly satisfy the QAI criterion. Resp. at 4. But the *Strand* petitioner had reported reduced range of motion, not just pain with motion, to his treating providers, and those facts were corroborated by witnesses. *Strand*, 2023 WL 2155188 at *5-6. Here, Mr. Manning did not complain of reduced range of motion when seeking treatment, nor do the witness affidavits indicate evidence of reduced range of motion (other than Petitioner's reluctance to engage in movement to avoid pain). Thus, like the petitioner in *Bolick*, Mr. Manning likely "manifested or experienced pain when his arm moved, and this pay may have deterred him from certain actions," but this is not enough to satisfy the reduced or limited range of motion necessary to sustain a Table SIRVA claim. *Bolick*, 2023 WL 8187307 at *9.

Petitioner also argues that his diagnosis of left rotator cuff syndrome and the imaging and treatment recommended are, in themselves, objective evidence of reduced range of motion. Resp. at 6-8. But – a petitioner cannot prove a Table SIRVA by demonstrating a diagnosis alone, even if the typical symptoms of that condition include reduced range of motion. *See Bolick*, 2023 WL 8189307 at *9. Further, physicians recommend imaging, such as x-rays or MRI's, for a variety of reasons, including at the request of the patient. Testing or imaging orders alone, without indication that they are specifically to assess reduced range of motion, cannot provide sufficient evidence to establish a Table SIRVA. Finally, the fact that the Petitioner was referred to physical

7

therapy to evaluate and treat his left shoulder with "ROM as appropriate" is not enough to infer the presence of reduced range of motion. *See Schoenborn v. Sec'y of Health & Human Servs.*, No. 21-0227V, 2024 WL 1342999, *7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024).

Accordingly, I find Petitioner has not preponderantly established that he suffered limited or reduced range of motion. However, Petitioner may have a causation-in-fact injury claim for some other possible injury based on this record, so the matter will be transferred out of SPU.

## Conclusion

Because Petitioner has not preponderantly established that he suffered from limited or reduced range of motion, he cannot proceed in this action with a Table SIRVA claim. Petitioner's Table SIRVA claim is therefore dismissed, for the reasons set forth above. The case will be reassigned to a Special Master outside of SPU.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master